# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTONIO COCA A/K/A ANTHONY ALVARAS,

    *Petitioner*,

vs.

DWIGHT NEVEN, *et al.*,

    *Respondents*.

2:05-cv-00816-JCM-RJJ

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the court for decision on the merits and further on petitioner's motion (#19) for status check.

### *Preliminary Matters*

At the outset, the court notes the following with regard to the status of the matter. The matter has been pending for decision, following the disposition of earlier-filed petitions, upon the expiration of the time for filing a reply in January 2006. Petitioner filed a motion (#16) in December 2007 seeking, *inter alia*, an opportunity to file a reply based upon his allegedly not having received the answer and other mailings in the case. The court expressed some doubt in this regard, but, out of an abundance of caution, the court granted the petitioner another thirty-day opportunity to file a reply, in an order (#17) entered on January 28, 2008. Petitioner thereafter wrote to the clerk stating that a copy of the answer and attachments had not been

1   sent to him as ordered by the court.  The clerk mailed a copy of same to petitioner on

2   February 15, 2008.  More than 75 days have passed, and a reply has not been received from

3   petitioner for filing.  Given that petitioner's motion for a status check now requests to be

4   advised as to the disposition of the case, it would appear that petitioner seeks disposition of

5   the case on the existing record without a reply.  His statement in #19 that he has not as yet

6   been notified as to the status of the petition since the time of a May 1, 2007, letter is incorrect.

7   The clerk's docket entry for the letter states that a copy of the docket sheet was mailed to

8   petitioner in response to the letter.  Moreover, the court and petitioner have communicated

9   with regard to his request to file a late reply, as summarized above.  The court would note that

10  any earlier difficulties with petitioner's receipt of mailings result from petitioner's use of an

11  alias as his lead name in the caption rather than the principal name under which he appears

12  in the Nevada Department of Corrections system.  An inmate wishing to reliably receive legal

13  mail should use the name under which he is carried in the prison system as the lead name

14  in his initial pleading.

15                          ***Factual and Procedural Background***

16          Petitioner Antonio Coca a/k/a Anthony Alvaras ("Coca") seeks to set aside his 2003

17  Nevada state court conviction, pursuant to a guilty plea, of burglary and his adjudication and

18  sentencing as a habitual criminal.

19          On his federal petition (#6), Coca alleges that he was denied rights to effective

20  assistance of counsel, due process, and a jury trial in connection with the habitual criminal

21  adjudication and sentencing.  He alleges, first, that defense counsel rendered ineffective

22  assistance when counsel conceded without his permission that the last three prior convictions

23  listed in the amended information were true.  He further alleges that the state district court

24  found facts over and above the existence of the prior convictions in the habitual criminal

25  adjudication that instead should have been determined by a jury, in violation of *Apprendi v.*

26  *New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  He alleges that counsel

27  was ineffective for failing to raise an objection under *Apprendi* and further that the state trial

28  court denied him his right to a jury trial and due process due to an *Apprendi* violation.

                                        -2-

1    The state court record materials on file reflect the following.

2    On June 13, 2003, petitioner was charged by information, as Anthony Alvaras a/k/a

3    Antonio Coca, with burglary.  The information expressly placed petitioner on notice that the

4    State intended to seek a habitual criminal adjudication if petitioner was found guilty of

5    burglary.  The information listed six prior felony convictions.[1]

6    On August 19, 2003, with the case postured to go to trial, petitioner entered a guilty

7    plea without entering into a plea bargain with the prosecution.[2]

8    In the written guilty plea agreement, Coca acknowledged that he understood that the

9    prosecution had filed for habitual criminal treatment, that he faced a possible sentence of life

10   without the possibility of parole, and that the offense was not subject to possible probation.

11   He further waived his right to a jury trial.[3]

12   During the plea colloquy, the circumstances regarding petitioner's potential habitual

13   criminal exposure were fully explained on the record by defense counsel and the prosecutor.

14   Petitioner acknowledged that he understood what had been explained by counsel.  He further

15   acknowledged that he had read the portion of the information that included the habitual

16   criminal allegation and that he had no questions with regard to the information.   He

17   acknowledged in particular that he understood: (a) that if the prosecution established at least

18   two prior felony convictions he could be adjudged a habitual criminal under the "small"

19   habitual criminal statute and sentenced to five to twenty years rather than the one to ten year

20   sentence otherwise applicable on the burglary charge; (b) that if the prosecution established

21   three or more felony convictions he could be adjudged a habitual criminal under the "large"

22   habitual criminal statute and sentenced to either ten to twenty-five years, life with the

23   possibility of parole after ten years, or life without the possibility of parole; and (c) that all such

24   decisions were within the discretion of the state district court. #11, Ex. C, at 8-15.

25   _____

26   [1]#11, Ex. A.

27   [2]See #11, Ex. B, at 1, Ex. C, at 4, line 24.

28   [3]#11, Ex. B, at 1 & 3.

-3-

1   On October 10, 2003, the prosecution filed both a motion to amend the information and
2   a brief in support of the request for habitual criminal treatment.

3   The motion to amend information sought to amend the information to: (a) add further
4   particulars – *e.g.,* as to the exact date in the year, county, and case number – on the six prior
5   convictions listed in the original information; and (b) add three additional prior convictions.[4]

6   Along with the brief in support of the request for habitual criminal treatment, the
7   prosecution attached certified documents as proof of eight of the nine convictions identified
8   in the proposed amended information.  The prosecution stated that certified documents for
9   the remaining conviction would be available by the date of the sentencing.  In its argument,
10  the prosecution noted that petitioner had been convicted of felonies in nine prior cases (not
11  counting a case with two counts as two different felonies), that seven of the prior convictions
12  were for burglary as in the present case, and that petitioner had been committing these
13  crimes regularly and consistently for 29 years, pausing only when he was in custody.  The
14  prosecution relied upon no other facts or factors in its argument.  The prosecution stated that
15  it would be seeking a sentence of life without possibility of parole, or, if the court were inclined
16  to show consideration for petitioner having accepted responsibility, albeit belatedly, either ten
17  to life or ten to twenty-five years, under the "large" habitual criminal statute.[5]

18  In the response to the supporting brief, defense counsel argued that habitual treatment
19  was not warranted because the offense had been non-violent; Coca was 58-1/2 years old; he
20  had been beaten, accosted, ridiculed and forced to stand naked until the police arrived by the
21  victim, the victim recovered all of his property after he forced Coca to strip down; Coca had
22  no contacts with Nevada, and he would be in his early to mid-sixties before release on a
23  standard ten-year burglary sentence. #11, Ex. F.

24

25  [4]#11, Exhs. A, D & H.  For example, where the original information stated "[t]hat on or about 1982,
    the Defendant was convicted in the State of California, for the crime of two (2) counts of BURGLARY," the
26  proposed amended information instead stated "[t]hat on or about December 14, 1982, the Defendant was
    convicted in the Los Angeles County, State of California, for the crime of two (2) counts of BURGLARY, 2nd
27  Degree, Case No. A563112."

28  [5]#11, Ex. E.

-4-

1    The defense did not file an opposition to the motion to amend the information.

2    On November 25, 2003, the matter came on for sentencing and consideration of

3    possible habitual criminal adjudication.

4    The state district court first took up the motion to amend information.  The court asked

5    defense counsel for his position on the motion to amend.  Counsel responded that "we're

6    conceding that he has at least three prior felony convictions."  The court thereupon granted

7    the motion to amend, with the certified copies of the convictions attached therewith.[6]

8    On the request for habitual criminal treatment, the prosecution tracked the argument

9    in its brief, noting further that the petitioner's conviction record showed that he previously had

10   been caught committing burglaries only days after his release or escape from custody.[7]

11   The state court next gave Coca an opportunity to speak.  Coca attributed his criminal

12   behavior to abuse of alcohol and crack cocaine.  According to Coca, he had not known that

13   he had a problem, for over forty years, until only a short time before.  He had been homeless,

14   but he had got back on his feet after he started going to meetings with Alcoholics Anonymous.

15   However, according to Coca, he had a relapse shortly prior to the burglary in this case.  He

16   sought leniency based upon his age, the absence of violence in his criminal history, and his

17   history of alcohol and drug problems.[8]

18   Defense counsel echoed these remarks together with those in his brief.[9]

19   The state court's decision, in its entirety, was as follows:

20   All right.  First of all, as to the issue of the prior convictions,
     I find that there's certainly prima facie evidence to support that he
21   has more than two and more than three convictions.  I see ten
     convictions  dating  back  27  years  over  five  states,  nine  for
22

23   [6]#11, Ex. I, at 3-4.

24   [7]*Id.*, at 4-6.

25   [8]*Id.*, at 6-9.  The court makes no credibility findings or other factual findings regarding the truth or
26   falsity of evidence or statements of fact in the state court.  The court summarizes same solely as background
     to the issues presented in this case.  No statement of fact made in describing statements, testimony or other
27   evidence in the state court constitutes a finding of fact by this court.

28   [9]*Id.*, at 9-12.

purposes of habitual criminal adjudication since two of them were received within the same case in 1982 in Pasadena. The documents that have been attached certainly suggest that there is more than three.

That vests discretion in this Court to adjudge the defendant a habitual criminal under NRS 207.010 either under the small habitual of five to 20 years or the large habitual of 10 to 15 years, ten to life or life imprisonment without the possibility of parole. Or, of course, the Court could exercise its discretion not to adjudge him a habitual criminal and sentence him up to ten years, although it's a mandatory prison time given his priors.

I find it somewhat incredible that it would take ten convictions and 25 years to recognize that alcohol would be a problem, and if the suggestion is that now he has realized as he indicates that alcohol was his problem and he's asking for help in that regard it just appears to me to be far too late for that. It is true that his convictions do not appear to be violent in nature, but it's not required. There is a separate habitual criminal statute, 207.012 I think, that addresses convictions of violence, and to say that no one is hurt suggests that residential burglaries aren't in and of themselves injurious to home owners.

I'm going to adjudge Mr. Coca as a habitual criminal. In addition to the $25 administrative assessment fee, the 150 DNA fee, the requirement that he submit to a DNA test as a habitual criminal, Mr. Coca, you're hereby sentenced to 300 months, that is 25 years, in the Nevada State Prison with a minimum term, that is, with the possibility of parole, after ten years or 120 months has been served. He's entitled to 182 days of credit. Anything else?

#11, Ex. I, at 12-13. The proceeding thereupon was concluded, without any additional statements, findings or discussion by the state district court, such that the foregoing constitutes the entire decision of the state court.

The judgment of conviction was filed on December 8, 2003. Petitioner filed a *pro se* motion to withdraw plea, which was denied. He did not appeal the denial of the motion or otherwise file a direct appeal from the judgment of conviction.[10]

On October 15, 2004, Coca filed a state post-conviction petition, which was denied. The Supreme Court of Nevada affirmed on appeal. The remittitur issued on May 3, 2005.[11]

/ / / /

---

[10]#11, Exhs., J-L.

[11]#11, Exhs. M-T.

1
2
3
4
5
6
7
8
9
10
11

***Governing Law***

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n.7,138 L.Ed.2d 481 (1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

12
13
14
15
16
17
18
19
20
21
22
23

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 17, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

24
25
26
27

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18,124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

28

/ / / /

1    To the extent that the state court's factual findings are challenged intrinsically based
2  upon evidence in the state court record, the "unreasonable determination of fact" clause of
3  Section 2254(d)(2) controls on federal habeas review.  *E.g., Lambert v. Blodgett*, 393 F.3d
4  943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly
5  deferential" to state court factual determinations.  *Id*.  The governing standard is not satisfied
6  by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.
7  Rather, the AEDPA requires substantially more deference:

8           . . . . [I]n concluding that a state-court finding is unsupported by
           substantial evidence in the state-court record, it is not enough that
9           we would reverse in similar circumstances if this were an appeal
           from a district court decision. Rather, we must be convinced that
10          an appellate panel, applying the normal standards of appellate
           review, could not reasonably conclude that the finding is
11          supported by the record.

12  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.  If
13  the state court factual findings withstand intrinsic review under this deferential standard, they
14  then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may
15  be overturned based on new evidence offered for the first time in federal court, if other
16  procedural prerequisites are met, only on clear and convincing proof.  393 F.3d at 972.

17    On a claim of ineffective assistance of counsel, the petitioner must satisfy the two-
18  pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
19  (1984).  He must demonstrate that: (1) counsel's performance fell below an objective standard
20  of reasonableness; and (2) counsel's defective performance caused actual prejudice.  On the
21  performance prong, the issue is not what counsel might have done differently but rather is
22  whether counsel's decisions were reasonable from his perspective at the time.  The reviewing
23  court starts from a strong presumption that counsel's conduct fell within the wide range of
24  reasonable conduct.  On the prejudice prong, the petitioner must demonstrate a reasonable
25  probability that, but for counsel's unprofessional errors, the result of the proceeding would
26  have been different.  *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

27    The petitioner bears the burden of proving by a preponderance of the evidence that
28  he is entitled to habeas relief.  *Davis*, 333 F.3d at 991.

*Discussion*

**Effective Assistance of Counsel:  Concession as to Prior Convictions**

Petitioner alleges, first, that defense counsel provided ineffective assistance of counsel when counsel conceded without Coca's permission that the last three prior convictions listed in the amended information were true.[12]

When Coca presented this claim to the state courts in his state post-conviction petition, he did not identify any deficiency, in the documentation or otherwise, as to either the original six convictions listed in the original information or the three additional convictions added by the amended information.[13]   He instead alleged that the state court relied upon the concession regarding the amended information to satisfy the requirement of at least three prior felony convictions, a point belied, as to the amended information, by the fact that there already were six convictions established on the original information.  Petitioner further alleged that "a proper opposition to the Motion to Amend Information would have been torwards the Motion's form or timing."  He did not identify, however, any apposite Nevada authority existing in November 2003 that would have established a reasonable probability that an objection to either the form or timing of the motion to amend would have resulted in the denial of the motion or otherwise would have changed the outcome of the habitual criminal proceeding.

On the state post-conviction appeal, the Supreme Court of Nevada rejected this claim on the following grounds:

> Appellant appeared to further claim that his trial counsel was ineffective for conceding to "the last three priors," and failing to challenge the State's motion to amend the information.  We conclude that appellant failed to demonstrate that his trial

---

[12]The concession actually made by counsel in fact was only that "we're conceding that he has at least three prior felony convictions," an apparent acknowledgment that there already were six convictions alleged and established on the original information.  The court, however, will review the claim on the *arguendo* assumption that this concession, with the lack of opposition to the motion to amend, functioned as the substantial equivalent of a concession to the truth of the three prior convictions in the amended information.

[13]#11, Ex. M, at 7a.  Under Nevada state post-conviction practice, a petitioner must attach affidavits, records or other evidence supporting the factual allegations of the petition, and he may not present merely an unsubstantiated claim.  *See* N.R.S. 34.370(4).  In this instance, Coca did not make even an unsubstantiated allegation that there was a deficiency with any of the nine convictions.

1
2
3
4
5
6

counsel's performance was deficient or that he was prejudiced. Appellant's trial counsel did not concede to "the last three priors"; rather, appellant's trial counsel conceded that appellant had at least three prior felony convictions.  The record contains proof of more than three prior felony convictions – a sufficient number for large habitual criminal treatment.[FN9]  A challenge to the motion to amend would have failed as the State was updating the specific information relating to the priors to have them conform with the actual judgments of convictions presented to the district court for consideration.[FN10] Therefore, the district court did not err in determining that these claims lacked merit.

7

[FN9]  See NRS 207.010(1)(b).

8

[FN10] See NRS 173.095(1).

9
#11, Ex. T, *Order of Affirmance*, at 4.

10       The Nevada Supreme Court's rejection of this ineffective assistance claim was neither

11 contrary to nor an unreasonable application of *Strickland* on the record and arguments

12 presented to that court.  Petitioner did not allege, much less establish, that there was any

13 deficiency in any of the nine convictions that served as the basis for the habitual criminal

14 adjudication, including the three convictions added by the amended information. He therefore

15 did not establish either that counsel's concession constituted deficient performance or that

16 he was prejudiced thereby.  That is, he did not establish – or even allege – that if counsel

17 instead had objected to the convictions that any conviction thereby would have been excluded

18 from consideration.  Moreover, with regard to Coca's unsupported contention that counsel

19 should have objected to the form or timing of the motion to amend, the state supreme court

20 held that such a challenge would have failed under state law.  The Supreme Court of Nevada

21 is the final arbiter of Nevada state law, and its holding on the issue is binding on this court.

22 *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 480,116 L.Ed.2d 385 (1991)("it

23 is not the province of a federal habeas court to reexamine state court determinations on state

24 law questions").  Petitioner accordingly cannot establish that the state high court's rejection

25 of his claim was either contrary to or an unreasonable application of *Strickland*.

26       This claim of ineffective assistance of counsel therefore does not provide a basis for

27 federal habeas relief.

28       / / / /

1    ***Effective Assistance of Counsel:  Failure to Object Based Upon Apprendi***

2    Petitioner further alleges that defense counsel provided ineffective assistance when

3    he failed to raise an objection under *Apprendi* to the state district court's alleged finding of

4    facts over and above the existence of the prior convictions in the habitual criminal adjudication

5    that instead should have been determined by a jury.  See ## 6 & 19.

6    The Supreme Court of Nevada rejected this claim on the following grounds:

8    Appellant claimed that his trial counsel was ineffective for
     failing to challenge the district court's usurpation of his right to a
9    jury trial to decide the issue of habitual criminality.  Appellant
     argued that pursuant to Apprendi v. New Jersey, a jury was
10   required to decide the issue of whether it was just and proper to
     adjudicate appellant a habitual criminal.  Appellant appeared to
11   acknowledge that Apprendi specifically excluded the fact of a
     prior conviction from the factual issues that must be resolved by
12   a jury, but he argued that whatever other facts were considered
     by the district court to determine that it was just and proper to
13   adjudicate appellant a habitual criminal must be submitted to a
     jury for decision.

14   Appellant failed to demonstrate that his trial counsel's
     performance was deficient or that he was prejudiced.  Appellant
15   was informed in the written guilty plea agreement and during the
     plea canvass of the State's intention to seek habitual criminal
16   adjudication, and the potential maximum penalty he faced if he
     was adjudicated a habitual criminal.  Appellant was also informed
17   in the written guilty plea agreement that he waived his right to a
     jury trial and that the district court determined the sentence within
18   the limits prescribed by statute.  This court has specifically held
     that the right to a jury trial does not extend to a habitual criminal
19   proceeding.  Rather, the decision of whether to adjudicate a
     defendant a habitual criminal is left to the discretion of the district
20   court and all that is required is that the district court actually
     exercise its discretion.  In the instant case, the record as a whole
21   reveals that the district court exercised its discretion to adjudicate
     appellant a habitual criminal.  Apprendi expressly excludes the
22   fact of a prior conviction from its holding, and there is nothing in
     Apprendi suggesting that a jury is required to participate in any
23   facet of the habitual criminal decision.[FN8]  Therefore, we
     conclude that the district court did not err in determining that this
24   claim lacked merit.

25   [FN8] See [Apprendi,] 530 U.S. at 490.  In
     fact, appellant's apparent argument to the contrary
26   is patently absurd because it would require the jury
     to make a decision of habitual criminality without
27   being presented with the facts relating to the prior
     convictions.    Appellant    failed    to    identify    the
28   additional facts that he believed were required to be

-11-

1
2
3

> presented to the jury in order for a just and proper determination.  Notably, NRS 207.010 does not specify as predicate factors any factors in addition to the required number convictions for habitual criminal adjudication.

4  #11, Ex. T, *Order of Affirmance*, at 2-4 (additional citation footnotes omitted).

5       The Nevada Supreme Court's rejection of this claim was neither contrary to nor an

6  unreasonable application of *Strickland*.  Under *Strickland*, an attorney's performance must be

7  assessed from the lawyer's perspective at the time of the representation, under then-existing

8  precedent.[14]  In *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140

9  L.Ed.2d 350 (1998), the United States Supreme Court held that a sentencing court may

10  enhance a sentence on the basis of prior convictions even if the fact of those convictions was

11  not found by a jury.  While the Supreme Court called the continuing vitality of *Almendarez-*

12  *Torres* into question two years later in *Apprendi*, it nonetheless remains true that *Apprendi* did

13  not overrule *Almendarez-Torres*.  Parties repeatedly have requested that the Ninth Circuit

14  disregard *Almendarez-Torres* based upon *Apprendi* and other subsequent Supreme Court

15  pronouncements.  The Ninth Circuit repeatedly has rejected these entreaties, holding in 2000,

16  2001, 2005, and again in 2007, that *Almendarez-Torres* remains binding law until explicitly

17  overruled by the Supreme Court.[15]  In the present case, Coca has not cited any apposite case

18  law – whether in existence at the time of the counsel's representation in November 2003, at

19  the time of the Nevada Supreme Court's decision in April 2005 , or now – holding that a

20  decision such as that made by the state district court  in this case on the habitual criminal

21  adjudication under N.R.S. 207.010 gives rise to an *Apprendi* violation.[16]   The Nevada

22

23
24       [14]*See,e.g., Murtishaw v. Woodford*, 255 F.3d 926, 950 (9th Cir. 2001); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994); *United States v. Zweber*, 913 F.3d 705, 712 (9th Cir. 1990).

25
26       [15]*See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1092-93 (9th Cir. 2007); *United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005); *United States v. Reyes-Pacheco*, 248 F.3d 942, 944-45 (9th Cir. 2001); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 413-14 (9th Cir. 2000).

27
28       [16]Coca relies upon the 2006 Ninth Circuit decision in *Kaua v. Frank*, 436 F.3d 1057 (9th Cir. 2006).  *Kaua* is inapposite.  *Kaua* concerned a two-step habitual offender inquiry under Hawaii state law in which the

(continued...)

-12-

1   Supreme Court's determination that counsel did not render ineffective assistance in failing to

2   raise an objection under *Apprendi* accordingly was not an unreasonable application of

3   *Strickland*.

4       This claim of ineffective assistance of counsel therefore does not provide a basis for

5   federal habeas relief.[17]

6       ***Alleged Apprendi Violation***

7       On the underlying substantive claim, Coca alleges that the state district court found

8   facts over and above the existence of the prior convictions in the habitual criminal adjudication

9   that instead should have been determined by a jury, in violation of *Apprendi*.  Although the

10  respondents have not responded to this claim in the answer, the federal petition alleges, *inter*

11  *alia*, that petitioner was denied rights to due process and to a jury trial, that the state district

12  court allegedly considered facts other than his prior felony convictions in adjudicating him a

13  habitual criminal, that those facts should have been presented to a jury for consideration, that

14  the trial court "usurped Mr. Coca's right to a jury trial," and that it did so "in violation of Mr.

15  Coca's right to due process."[18]

16      The Supreme Court of Nevada did not address this substantive claim on the merits.

17  The state high court instead held as follows with regard to all substantive claims asserted

18  independently of the ineffective assistance claims:

19

20      [16](...continued)

21  state district court determined in the second step whether an extended sentence was necessary for the
protection of the public.  The Ninth Circuit held that the resolution of this second step inquiry by the state court

22  rather than a jury violated *Apprendi*, because the Hawaii state court was making a factual determination other
than the fact of the prior conviction.  In contrast, the habitual criminal inquiry under Nevada statutory law

23  involves no such second step as in Hawaii.  *Kaua* therefore is distinguishable in substance.  Moreover, *Kaua*
had not been decided in either 2003 or 2005.

24

25      [17]Moreover, this court holds below on the underlying substantive claim, on *de novo* review, that no
*Apprendi* violation occurred.  However, even if a court were to hold otherwise on the underlying substantive

26  claim, the Nevada Supreme Court's holding on the ineffective assistance claim was neither contrary to nor an
unreasonable application of *Strickland* based on the precedent in existence at the time of defense counsel's
representation as well as at the time of the state high court's decision.

27

28      [18]#6, at 3 to 3b.  Coca made corresponding allegations in his state post-conviction petition.  See #11,
Ex. M, at 7, line 4, and 7b, lines 5-22.

1

2

3

4

       To the extent appellant asserted claims independent from his allegations of ineffective assistance of counsel, he waived these claims and failed to demonstrate good cause for his failure to raise them earlier.  See Franklin v. State, 110 Nev. 750, 752, 877 P.2d 1058, 1059 (1994) overruled on other grounds by Thomas v. State, 115 Nev. 148, 979 P.2d 222 (1999).

5   #11, Ex. T, at 2 n.1.

6        In the answer, the respondents do not address the petitioner's underlying substantive

7   claim under *Apprendi,* and they instead address only the ineffective assistance claims.  The

8   court will assume, *arguendo*, that the respondents have waived any procedural default

9   defense by failing to raise the defense in the answer.[19]  Moreover, because the claim was not

10   addressed on the merits in the last reasoned decision on the claim by the Supreme Court of

11   Nevada, this court reviews the substantive claim under a *de novo* standard of review rather

12   than under the deferential standard of review under the AEDPA,.  *See,e.g., Chaker v. Crogan*,

13   428 F.3d 1215, 1221 (9th Cir. 2005).

14        On *de novo* review, the court holds that the state district court did not violate *Apprendi*.

15   The only factual matters, other than the prior convictions, to which the state district court

16   referred in its discussion were Coca's effort to attribute his nearly three decades of criminal

17   behavior to a substance abuse problem that he had only recently recognized and his

18   argument that the offenses had been nonviolent.  *Apprendi*, however, does not hold that any

19   state court discussion of any fact not found by a jury violates the right to a trial by jury.

20   Rather, *Apprendi* instead holds only that "[o]ther than the fact of a prior conviction, any fact

21   *that increases the penalty for a crime beyond the prescribed statutory maximum* must be

22   submitted to a jury."   530 U.S. at 490, 120 S.Ct. 2362-63 (emphasis added).  That is,

23   defendants "are entitled to a jury determination of any fact *on which the legislature conditions*

24

25

26

27

28

[19]*See,e.g., Morrison v. Mahoney*, 399 F.3d 1042, 1045-47 (9th Cir. 2005)(the procedural default affirmative defense must be raised in the first responsive pleading in order to avoid waiver, with the answer rather than a motion to dismiss constituting the first responsive pleading); *see also Vang v. Nevada*, 329 F.3d 1069, 1072 (9th Cir. 2003)(instead basing the waiver on the failure to raise the defense in the respondents' motion to dismiss); *but cf. Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)(district court could *sua sponte* raise timeliness issue, which was an affirmative defense like procedural default, even after the state conceded in its answer that the petition was timely, due to a miscalculation by the state).

1  *an increase in their maximum punishment.*" *Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct.

2  2428, 2432, 153 L.Ed.2d 556 (2002)(emphasis added).  The facts relied upon by Coca in

3  seeking to mitigate his punishment that in turn were discussed by the state district court were

4  not facts that increased the penalty or as to which the Nevada legislature had conditioned an

5  increase in the maximum punishment.  The Nevada statute in question did not condition

6  habitual criminal treatment on factual findings either with regard to whether the defendant's

7  criminal history was the result of an allegedly unrecognized substance abuse problem or with

8  regard to whether the prior crimes were nonviolent.  The state district court's discussion in its

9  habitual criminal adjudication of alleged mitigating facts raised by the defendant did not give

10  rise to an *Apprendi* violation.[20]

11          This claim therefore does not provide a basis for federal habeas relief.

12          IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be

13  DENIED on the merits and that the petition shall be DISMISSED with prejudice.  The clerk

14  of court shall enter final judgment accordingly in favor of respondents and against petitioner,

15  dismissing the petition with prejudice.

16          IT FURTHER IS ORDERED that petitioner's motion (#19) for a status check is

17  GRANTED to the extent that the clerk shall send petitioner a copy of the docket sheet with

18  the service copy of this order.

19          DATED:  May 14, 2008.

20

21

22                                                    _____

23                                                    JAMES C. MAHAN
                                                      United States District Judge

24

25

26

27          [20]*Accord United States v. Tarallo*, 380 F.3d 1174, 1192 (9th Cir. 2004)(*Apprendi* was inapplicable to a
    partial affirmative defense that could mitigate a defendant's sentence but that was not an additional element

28  that could increase the sentence).